TRINA A. HIGGINS, United States Attorney (#7349)
SAM PEAD, Assistant United States Attorney (#11945)
Attorneys for the United States of America
111 South Main, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH AND SEIZURE OF CELLULAR DEVICE ASSOCIATED WITH PHONE NUMBER (435) 724-0630 | Case No. 2:24mj216 CMR |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Tanner Nelsen being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, namely, a cellular phone (electronic device) described in Attachment A. This electronic device is currently in law enforcement's possession. The specific evidence being sought is in the form of electronically stored information on the device which is further described in Attachment B, which is electronic data evidence that falls within a specific date range.

2. I am a Deputy with the United States Marshals Service (DUSM) and have been since September 13, 2020. I am assigned to the Salt Lake City Office, in the District

of Utah. I have completed the twelve (12) week Criminal Investigator Training Program and Basic DUSM Training course at the Federal Law Enforcement Training Center in Glynco, Georgia. These courses consisted of classes in federal law, evidence handling, interviewing techniques, firearms investigations, and tactical training in the execution of search and arrest warrants. Prior to my employment by the United States Marshals Service, I was a Law Enforcement Officer (LEO) in Utah for almost 6 years. I attended the Utah State Peace Officers Standards and Training Academy where I received a block of narcotics identification and basic investigation instruction from experts in the field. During the course of my employment, I have attended several training courses focusing on Forensic Interviewing Training, Reed Interrogation and Techniques, and Crisis Intervention. As a Police Officer assigned to the patrol division, I routinely came in contact with admitted narcotics users and distributors. During this time, I made several arrests of persons in violation of the Controlled Substance Act. Prior to working for South Salt Lake Police Department your Affiant was employed by the United States Army and took part in numerous operations in both Iraq and Afghanistan.

3.      My responsibilities include the enforcement of federal laws, and I have participated in several fugitive investigations. This affidavit is based on my own investigation, as well as materials from other law enforcement investigators that I have reviewed, including, oral and written reports by other law enforcement officers, physical surveillance, interviews, database and public records checks, searches, and other investigation. This affidavit is intended to show merely that there is sufficient probable

cause for the requested warrants and does not set forth all my knowledge about this matter.

4. My interpretations of certain statements or words are based upon my knowledge of this investigation and my training and experience, including my experience investigating drug and weapons related crimes. I learned the matters set out in this affidavit from my review of reports, records, affidavits, etc., through discussions with other law enforcement officers/personnel, and from my own investigation which caused me to believe the information included to be true. Dates and times are approximate.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a cellular phone associated with the phone number (435) 724-0630. This phone is a baby blue Apple iPhone cellular device with a black case and a cracked screen. The property to be searched is currently located at the Salt Lake County Jail, 3415 S. 900 W. South Salt Lake City, Utah, and was booked for safe keeping after Eddison Orrin Piapot was arrested on a federal warrant for violations of supervised release. The applied-for warrant would authorize the forensic examination of the phone for the purpose of identifying electronically stored data (evidence) more particularly described in Attachment B.

### PROBABLE CAUSE

6. As set forth in more detail below, there is probable cause to believe that electronically stored information described in Attachment B is recorded on the electronic device described in Attachment A, which constitutes evidence of drug trafficking in

violation of 21 U.S.C. § 841(a)(1), for *Distribution and Possession with Intent to Distribute a Controlled Substance*.

7. On October 30, 2023, the United States District Court of Utah issued a warrant for Eddison Orrin Piapot for alleged violations of 18 U.S.C § 3583 *Supervised Release Violation*. This warrant was issued by the Honorable Dale A. Kimball.

8. On November 3, 2023, members of the United States Marshals Service VFAST and certain US Federal Probation Officers met with law enforcement officers from the Bureau of Indian Affairs at the Ute Indian Tribe Justice Center located in Ft. Duchesne, Utah. The case was briefed and VFAST members went to Edison Piapot's residence, which was a fifth wheel style travel trailer located at a trailer spot in Ft. Duchene, Utah.  Edison Piapot was taken into custody without incident pursuant to the warrant previously issued.

9. A probation searched of the residence was conducted and multiple items of contraband were located including multiple unused baggies, paraphernalia (pipe), and a scale that can weigh out materials and substances and is commonly used for distribution of narcotics. Importantly, law enforcement also found 31.2 grams of Methamphetamine. The determination that this substance as methamphetamine is based on our training and experience and a field-test that showed the substance as positive for methamphetamine. Outside of the Defendant's residence, law enforcement observed surveillance cameras. See picture below.



10.     From both my training and experience and that of other officers, this amount of methamphetamine is consistent with drug trafficking, as people that are simply just using methamphetamine often possess much smaller amounts, referred to as "user amounts" that usually range from .1 of a gram to a gram or two. This conclusion is bolstered by the facts that the methamphetamine was found along with numerous baggies and a digital scale, the latter of which is used to weigh out the amounts being sold, and the former being a storage container for the transfer of the user amount being sold to another from the larger cache of the drug. It has also been my experience that persons involved in drug trafficking and other crimes place surveillance cameras outside of their residences.

11.     Law enforcement with the BIA were asked if they are aware of specific information relating to Piapot trafficking drugs. They stated that they were not aware of him being involved in the illicit drug trade from other investigations they are involved in.

12.     In submitting this affidavit, I recognize that the amount of methamphetamine here is not as conclusive as pounds and ounces would be with regard to drug trafficking, and Piapot's expected customer list, as a result, is likely to be smaller when compared to persons possessing ounces and pounds for distribution. That being said, based on my (and others) training and experience, it is extremely unlikely that the 31.2 grams possessed here was solely for his own personal use, especially when considering the unused baggies and scale found with the drugs.

13.     Common experience has taught us that people use their cellular phones and similar electronic devices to communicate with others about their activities, including activities where they are marketing, trading, selling, and exchanging commodities. This is especially true for drug trafficking.

14.     Through my training and experience I know that cellular electronic devices are used to communicate and arrange the distribution of illegal narcotics. Cellular device can store information such as subscriber, data call logs, call history, text history, contacts, video, photographs, communication through social media applications, connections to other devices, reminders, and notes.

15.     Based on the facts of this case, and the experience noted above, there is probable cause to believe that evidence of drug trafficking is included in the information contained on the cellular device described in Attachment A. Attachment B outlines the type of evidence being sought and a date range where we would expect to see relevant evidence based on the fact of this case.

16. The phone described above is currently held at Salt Lake County Jail in Edison Orrin Piapot's property. This was the phone that Edison Piapot identified as his and requested to take to jail with him. I personally watched him use the device so that he could contact his sister to take care of the property while he was gone, evidencing that the phone belongs to and has been used by him.

## **TECHNICAL TERMS**

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic

  data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable

storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and

international borders, even when the devices communicating with each other are in the same state.

18. Based on my training, experience, and research, I know that "smartphones" like mobile devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and sometimes where.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    h. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

11

portion of a file (such as a paragraph that has been deleted from a word processing file).

i. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

j. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

k. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

l. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.  *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the cellular device described in Attachment A to seek the items described in Attachment B for evidence during the date range outlined therein.

Respectfully submitted,

 */s/ Tanner Nelsen*
Tanner Nelsen
United States Marshals Service

Subscribed and sworn to me by reliable electronic means
on March 6, 2024:



HONORABLE CECILIA M. ROMERO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a baby blue Apple I phone cellular device with a cracked screen and black case that is associated with phone number (435) 724-0630. This device is currently located at the Salt Lake County Jail, 3415 S. 900 W. Salt Lake City, Utah.

This warrant authorizes the forensic examination of the Mobile Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the mobile cellular device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), *Distribution and Possession with Intent to Distribute a Controlled Substance*, that were made or accessed between the date range of October 27, 2023, to November 3, 2023, including the following types of data during that same date range:

   a. information and communications documenting drug and money laundering activities. Communications between coconspirators known and unknown discussing the drug and money laundering conspiracy which may be documented in emails, drafts, notes, applications, text messages, and other means of communication.

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording Piapot's schedule or travel up to date of arrest on November 3, 2023;

f.  all bank records, checks, credit card bills, account information, and other financial records;

g.  evidence of user attribution showing who used or owned the Mobile Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.